IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAMBRIANS FOR THOUGHTFUL
 DEVELOPMENT, U. A., JOHN MUELLER,
TOM JANSMA and MARY JANSMA,

                                                                               OPINION AND ORDER

                Plaintiffs,

                                                                  Case No. 07-cv-246-bbc

      v.

DIDION MILLING, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Cambrians for Thoughtful Development, U.A. and several Cambria, Wisconsin residents brought this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a), for injunctive relief and civil penalties, alleging that defendant Didion Milling, Inc. violated the Clean Air Act and permits issued to it pursuant to the Act. Before the court are defendant's motion for summary judgment in which defendant contends that plaintiffs lack standing and that their claims are moot. Also before the court is plaintiffs' motion for partial summary judgment on the merits of the claims.

      I conclude that plaintiffs lack standing to pursue their claims because the alleged violations were not ongoing at the time the complaint was filed and are unlikely to recur.

1

Consequently, plaintiffs have failed to demonstrate that a favorable decision in this case is likely to afford them redress for their injuries as required by Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), and their amended complaint must be dismissed for lack of subject matter jurisdiction.

## FACTS

Defendant owns and operates a corn mill in Cambria, Wisconsin. Members of plaintiff Cambrians and the individual plaintiffs live near the mill. The milling operation emits particulate matter into the air that has been observed by the individual plaintiffs and has had an adverse impact on them and their property.

On July 23, 2002, the Wisconsin Department of Natural Resources issued a notice of violation to defendant because the mill was operating without a permit and exceeded 5,500 tons of grain throughput per month and one million bushels of storage capacity, above which a Clean Air Act permit is required. In response, defendant applied for a permit. The DNR issued permit 02-RV-166 on May 12, 2005. Permit 02-RV-166 required that defendant install simple fabric filters on the silo vents within 90 days of permit issuance, so as to reduce particulate emissions from the mill. Defendant failed to install the filters as required by the permit. On March 20, 2006, the DNR inspected the mill and informed defendant that it was in violation of its permit because it had failed to install the filters. On

May 3, 2006 defendant and the DNR held an enforcement conference to discuss solutions to defendant's violations. At the conference defendant agreed to install the filters and change them daily in accordance with the permit. In response to the conference, defendant installed the filters more than nine months late, on or about May 15, 2006. Defendant did not change the filters daily.

In addition, permit 02-RV-66 also required defendant to keep certain records, including manufacturers' specifications for the filters, records of all inspections, maintenance and repairs. It also required defendant to prepare and implement a malfunction prevention and abatement plan for the filters. Defendant failed to keep the records or prepare a plan. Defendant was required by the permit to inform the DNR of these violations and failed to do so.

On May 26, 2006, defendant submitted an application for a new permit for the mill and a proposed ethanol plant. In response, on October 19, 2006, the DNR issued permit 06-DCF-166 which applied to the mill as well as the planned ethanol plant. In place of the earlier requirement for simple fabric filters, permit 06-DCF-166 required the use of a baghouse to filter emissions, which defendant installed in December, 2006. Pursuant to the permit, plaintiff was obligated to maintain a prescribed pressure drop from the storage facilities to the baghouse and to monitor the pressure. Defendant's monitoring records indicate numerous pressure readings outside the prescribed parameters.

One provision of permit 06-DCF-166 limited hours of operation for the mill's grain dryer to October and November, 10:00 a.m. to 3:00 p.m. Defendant violated this provision, operating the dryer outside the prescribed hours on thirty-six days between October 19 and December 6, 2006. Defendant also failed to comply with the requirements of the 06-DCF-166 permit that it maintain an accurate record of dryer hours and notify the DNR of violations. On December 6, 2006 a DNR agent visited the mill and observed the dryer being operated outside permitted hours. On December 20, the DNR issued defendant a notice of violation for operating outside permitted hours and an enforcement conference was held on January 23, 2007. In January, 2007, defendant applied for a another permit, which led to the issuance of permit 07-DCF-003 on September 4, 2007. This permit permitted extended hours of dryer operation to a yearly average of 222.2 hours per month, provided that defendant permanently converted its dryer to an enclosed stacked vent dryer. Defendant completed the conversion in September 2007. Defendant did not operate the dryer between February 2006 and the completion of the dryer conversion and issuance of permit 07-DCF-003.

On February 9, 2007, plaintiffs served defendant with a notice of intent to sue under the Clean Air Act, asserting that the failure to install fabric filters on the silo vents and the operation of the dryer outside permitted hours violated permits 02-RV-166 and 06-DCF-166. On April 30, 2007 plaintiffs filed the complaint. On August 10, 2007, plaintiff served

4

a second notice of intent to sue for defendant's failure to maintain required records and report violations concerning filter installation and dryer operations. On October 12, 2007, plaintiffs filed their amended complaint.

All three permits included particulate emissions limitations on defendant's grain storage facilities and dryer and ambient air monitoring requirement. According to defendant's monitoring, it exceeded the particulate emission standards on five occasions between April 30, 2007 and May 30, 2007, at levels and frequency that the DNR judged "rather egregious." On January 4, 2008, the DNR sent defendant a letter of non-compliance for the exceedences. On February 13, 2008, defendant sent a letter to the DNR, saying that it had failed to perform air monitoring requirements since approximately June 2007 and therefore did not know whether it had exceeded emissions limitations during that period. Defendant's employee failed to complete the tests because he anticipated exceedences that he did not want to report to the DNR.

On February 20, 2008, plaintiffs served defendant with a third notice of intent to sue, alleging particulate emission monitoring and reporting violations and baghouse pressure drop violations, among other things.

OPINION

It is undisputed that defendant violated the Clean Air Act by failing to comply with

5

the terms of its permits. The Clean Air Act authorizes any person to bring a civil action against a person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of" an order issued by a state pursuant to the Act. 42 U.S.C. § 7604(a)(1). The principal issues on these cross motions for summary judgment are whether plaintiffs had standing to maintain this action at the time it was commenced and, if they did, whether their claims became moot during the course of the action.

## A. Standing

The requirements for standing under Article III of the Constitution are well established. First, the plaintiff must have suffered an "injury in fact," that is, an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of; the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). It is undisputed that plaintiffs satisfy the first two requirements because unrefuted affidavits establish that plaintiffs are directly and adversely affected by particulate

6

emissions from the mill and that lack of filtration and greater hours of operation increased particulate emissions.

The parties vigorously dispute whether these injuries are likely to be redressed by this action, as required by element three. Plaintiffs offer two theories in support of redressability. First, the history of violations and likelihood of future violation is sufficient to support a finding that penalties will deter future violations. Second, the potential that civil fines can be used for a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) is sufficient, independent redress to sustain standing. I conclude that neither theory can sustain a finding that the remedies requested would provide redress for the claims in plaintiffs' amended complaint.

1. Deterrent effect as redress.

Generally, neither a declaration of past violations nor the availability of civil penalties payable exclusively to the government for such past violations constitutes redress for purposes of the third element of standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 106-7 (1998). However, civil penalties payable to the government may constitute redress for a plaintiff who faces the threat of future injury from ongoing violations, because such sanctions may act as a deterrent to future violations. Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185-6 (2000).

7

Standing must be addressed separately for each claim and each form of relief. Id. To defeat a motion for summary judgment on the issue of redress, a plaintiff must present facts from which a reasonable factfinder could conclude that the allegedly unlawful acts that are the subject of the claim were occurring at the time the complaint was filed or that future recurring violations were likely. Lujan, 504 U.S. at 561. Plaintiffs have failed to satisfy this burden.

In claim one of the amended complaint, plaintiffs allege that defendant violated permit 02-RV-166 by failing to install fabric filters on silo vents. However, permit 06-DCF-166 displaced permit 02-RV-166 on October 19, 2006, eliminating the fabric filter requirement and replacing it with a baghouse requirement. Construction of the baghouse was completed in December 2006. By the time plaintiff filed its original complaint on April 30, 2007, a fabric filter was no longer required by defendant's permit. As a result, it is impossible for plaintiffs to demonstrate either that the failure to install and maintain the fabric filters was ongoing on April 30, 2007 or that the fabric filter requirement was likely to be violated in the future. In claims two through six of the amended complaint, plaintiffs allege the following violations: operating the mill without fabric filters in violation of emission limits; failure to keep records concerning filters; failure to prepare a maintenance plan for the filters; improper construction; operation of the mill without filters; and failure to inform the DNR of fabric filter violations. Each claim is directly dependent on the failure

8

to properly comply with fabric filter requirements. From the perspective of redress, there is no possible injunctive relief because the requirements no longer exist. Similarly, no sanction for these past violations could deter future violations of the fabric filter requirements because there was no possibility of recurrence when the complaint was filed.

Claims seven through twelve have the same fatal standing flaw. In claim seven, plaintiffs allege that defendant operated its grain dryer for excessive hours in violation of the limitations of permit 06-DCF-166. However, it is undisputed that defendant ceased operating the dryer outside permit times at least by January 2007, more than three months before plaintiffs filed the complaint. Furthermore, as a result of the January 2007 enforcement conference, defendant agreed to make capital improvements to its dryer and applied for the superseding 07-DCF-003 permit that greatly expanded the permissible hours of dryer operation. Consequently, by the time plaintiffs filed their complaint, defendant had ceased violating the restriction upon which the claim was based and the likelihood of future violations of this requirement had evaporated. Claims eight through twelve depend upon the dryer time violations in the same way that claims two through six depend on the fabric filter violations.

In an effort to overcome their apparent failure to meet the redressability requirement for any of their claims, plaintiffs advance several innovative, though ultimately unpersuasive, arguments. First, plaintiffs contend that some of the procedural violations, including

9

inadequate record keeping, operating in violation and failure to notify the DNR of violations are ongoing and that these same provisions remain in the successor permits. This argument elevates form over substance. Each of those alleged violations was tied directly to the substantive permit violation to which it related. It would not be redress to order retroactive creation of records relating to past violations. Nor is it sensible to suggest that a failure to report or maintain records about a particular permit violation opens the door to establish standing by showing a likelihood of violation of the same reporting requirement for entirely different substantive obligations.

Second, plaintiffs argue that potential future violations are sufficiently similar to the filter and dryer violations that standing should be recognized. Specifically, plaintiffs note that the baghouse requirements and extended dryer time limitation of the new permits are similar to the displaced fabric filter and operation hours provisions that are the subject of their violation notices and complaints. More fundamentally, plaintiffs argue that limits on particulate emissions have remained constant through all permits and that sanctioning defendant for its past violations of the fabric filter and dryer time requirements will have the effect of reducing the likelihood that defendant will violate the emission standards. Plaintiffs note that the ultimate goal of both permit requirements for which it has alleged claims was attainment of emission limits.

For a variety of reasons, plaintiffs analysis cannot withstand scrutiny. Standing must

10

be based on the claims plaintiffs brought, not on claims they might have brought, but did not. Unhitched from its mooring to a particular past violation, deterrence of future violations amounts to a generalized interest in deterrence, insufficient to support standing.

Furthermore, such an approach would undermine the requirement that the notice of violation "be sufficiently specific to inform [defendant] about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997). Plaintiffs' notices to defendant identified fabric filter installation and dryer time operations as violations. In response, after compliance meetings with the DNR, defendant made capital improvements to its facilities that eliminated the possibility of future violations of the noticed violations. The concerns expressed by the Supreme Court in Gwaltney v. Chesapeake Bay foundation, 484 U.S. 49, 60-61 (1987), are equally applicable to plaintiffs' argument that they should be afforded standing to seek redress for violations not contained in their notices or complaint:

> Suppose that the Administrator identified a violator of the ACT and issued a compliance order. . . . Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not have been obliged to take. If citizens could file suit, months or years later, in order to seek civil penalties that the administrator chose to forgo, the administrator's discretion to enforce the Act would be

11

>curtailed considerably. The same might be said of the discretion
>of state enforcement authorities.

Under circumstances remarkably similar to those posited by the Supreme Court, defendant, in concert with the state administrator, permanently relegated the noticed fabric filter and dryer operation violations to the past by negotiating substantially different and more permissive permit conditions in exchange for investments in pollution-reducing capital improvements. In doing so, defendant and the DNR legitimately foreclosed the possibility of a citizen suit on the prior violations by depriving plaintiffs of standing. This result has the effect of preserving the administrator's authority to resolve violations consistently with its view of the public interest and of accomplishing the objective of the notice and citizen suit to bring a halt to the offending conduct.

Finally, contrary to plaintiffs' contentions, the current baghouse and dryer limitations are significantly different from the old fabric filter and dryer operating hours limitation that are the subject of the amended complaint. Under the previous standards, defendant could operate the dryer for a total of 305 hours each year and then only at specifically defined times in two months. Present standards permit operation for more than 2600 hours a year with no specific time restrictions. Violation of the former, highly restrictive standard does not suggest a likelihood that the far more permissive standard will be violated in the future. Although it is true that the newly constructed baghouse is designed to filter out particles as

12

the previously required fabric filters were, the technology is significantly different.  This is evidenced by plaintiffs' most recent notice of intent to sue that alleges failures to monitor and maintain an appropriate pressure drop for air to be filtered in the baghouse.  There is no analogous requirement in the use of fabric filters.  Standing to complain about such dissimilar violations cannot be based on a notice and complaint that addressed entirely different violations.  See Comfort Lake Ass'n, Inc. v. Dresek Contracting, Inc., 138 F.3d 351, 355 (8th Cir. 1988)(citizen suit limited to violations closely related and of same type as noticed violations.)

Plaintiffs' February 2, 2008, notice of violation alleging particulate emission monitoring and reporting violations and baghouse pressure drop violations, among other things, may support standing for a subsequent action based on these alleged violations.  It is also undisputed that defendants have had several emission levels violations that may form the basis for a subsequent action.  However, the fact that there may be ongoing egregious and chronic violations of distinctly different permit provisions does not entitle plaintiffs or the court to ignore the requirements for jurisdictional standing.

2.  Beneficial mitigation project

Plaintiffs cite 42 U.S.C. § 7604(g)(2) as an independent basis to satisfy the Lujan redress element:

13

> . . . the court in any action under this subsection to apply civil penalties shall have discretion to order that such civil penalties, in lieu of being deposited [in a United States Treasury fund], be used in beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment.

The provision limits expenditures to $100,000 and requires consultation with the Environmental Protection Agency. Plaintiffs argue that a mitigation project could redress injuries they sustained as a result of the fabric filter and dryer operation violations, and therefore satisfies the standing requirement for wholly past violations.

Because the beneficial mitigation project provision is unique to the Clean Air Act, the Supreme Court had no occasion to consider the issue in either Steel Co. or Laidlaw, which addressed claims under the Emergency Planning and Community Right-To-Know Act and Clean Water Acts, respectively. In fact, only two courts have considered the issue and they reached opposite conclusions. In United States v. LTV Steel Co., Inc., 187 F.R.D. 522, 526 (E.D. Pa. 1998), the court permitted intervention by a citizens group in a government suit for money damages relating to pollution from prior operations of a closed coke plant, relying on the beneficial mitigation project provision as the basis for redressability. In contrast, in Anderson v. Farmland Industries, Inc., 45 F. Supp. 2d 863, 871n.10 (D. Kan. 1999), the court summarily rejected § 7604(g)(2) as a basis for redressability, finding that such a mitigation project could not remedy injuries sustained by neighbors of an air polluter.

I conclude that although a mitigation project pursuant to § 7604(g) could, under certain circumstances, supply the necessary redress to support standing, it does not do so here. A mitigation project that proposes to remedy property damage or health consequences of defendant's past violations could redress plaintiffs' injuries. However, plaintiffs do not request such a project or even suggest that such injuries are identifiable. A project that generally enhances the public health or environment is no more redress for plaintiffs' particular claims than a fine that generally encourages future compliance with the Act and benefits the undifferentiated public interest. Steel Co., 523 U.S. at 106. Plaintiffs suggest nothing more, identifying only "a project to reduce air pollution, and a project to make information about air emissions (DMI's included) better available." Pltfs.' resp. br. at 10. Such projects do not effectively redress injuries to plaintiffs resulting from excessive dryer operations or failure to install fabric filters in 2006 to any greater degree than fines for wholly past non-compliance.

## B. Other Pending Motions

Because I conclude that plaintiffs lacked standing at the time the complaint was filed, it is unnecessary to address the contention that the issue of standing was later rendered moot. It follows from the conclusion that plaintiffs lack standing that their motions to bifurcate trial (docket #22) and for partial summary judgment (docket #37) must be denied.

15

The remaining pending motion, plaintiffs' motion to strike portions of the declaration of Garry Gard (docket # 72), has been rendered moot by the conclusion that recordkeeping relating to baghouse operations is irrelevant to the standing issue.

ORDER

IT IS ORDERED that defendant's motion for summary judgment (dkt # 32) on the ground that plaintiffs lack standing is GRANTED.

FURTHER, IT IS ORDERED that plaintiffs' motions to bifurcate trial (dkt #22), for partial summary judgment (dkt #37), and to strike the declaration of Garry Gard (dkt # 72) are DENIED.

The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 27th day of March, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge